UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MICHAEL ANTHONY KENDRICK,

        Plaintiff,

v.                                        Case No. 8:08-cv-1892-T-33TGW

DESK DEPUTY CORY FAIRCLOTH in his individual capacity;
HILLSBOROUGH COUNTY SHERIFF DAVID GEE in his official
and individual capacity; and SUPERVISOR IN THE HILLSBOROUGH
COUNTY SHERIFF'S DEPARTMENT CORPORAL NITIKA JENNINGS,
in her official and individual capacity.

        Defendants.
_____

## O R D E R

This cause is before the Court on Defendants' motion for summary judgment, with exhibits and supporting affidavits (Doc. Nos. 77-84); Plaintiff Kendrick's motion for partial summary judgment, with supporting statements (Doc. Nos. 85-88); Kendrick's motion for costs judgment (Doc. No. 89); Defendants' response to Kendrick's motion for partial summary judgment and for costs judgment (Doc. No. 90); and Kendrick's filings in opposition to Defendants' motion for summary judgment. (Doc. Nos. 94, 95, 96).

## THE 42 U.S.C. § 1983 COMPLAINT

Plaintiff Kendrick, an inmate presently incarcerated at Century Correctional Institution, Century Florida, alleges that on November 13, 2007, while in the care and custody of Defendants as an inmate at the Faulkenburg Road Jail, Hillsborough County, Florida,  he was subjected to excessive force and denied medical care in violation of the

Eighth Amendment, and was subsequently kept in disciplinary confinement in violation of the Fourteenth Amendment. He further alleges that such conduct constituted "abuse and neglect of a disable[sic] adult, assault and battery and negligence" and was also a violation of the Americans with Disabilities Act. (Doc. No. 1).

Kendrick seeks a declaratory judgment finding "that the Defendants' acts, policies and practices herein described and complained of violated Kendrick's rights under the United States Constitution, American [sic] with Disabilities Act and the Florida Constitution." He also seeks injunctive relief and compensatory and punitive damages. **Nowhere in the complaint does Kendrick allege any kind of retaliation on the part of any defendant for any reason.**

## FACTUAL BACKGROUND

At all times relevant to Kendrick's complaint, Defendants Faircloth and Jennings were sworn Hillsborough County Sheriff's Office (HCSO) law enforcement officers assigned to the Faulkenburg Road Jail, Hillsborough County, Florida. Defendant Gee was, and is, the Sheriff of Hillsborough County, Florida.

On July 11, 2005, Kendrick first came into the custody of the HCSO as a pretrial detainee on a charge of attempted murder. (Affidavit of Sheriff David Gee, Doc. No. 78, (hereinafter "Gee Affidavit")). Upon his arrival at the jail, Kendrick was afforded a full history and medical examination. (Affidavit of Dr. Bethany Weaver, Doc. No. 79 (hereinafter "Weaver Affidavit")). According to Kendrick's inmate medical records, he is approximately 5'11" tall and weighs 175 lbs. (Id). Prior to November 13, 2007, the date of the presently alleged excessive use of force event, Kendrick had been disciplined for refusing to follow

verbal commands and had to be forcefully redirected into a cell. (Affidavit of Nitika Jennings, Doc. No. 81 (hereinafter "Jennings Affidavit")). His inmate file demonstrates that he was aware of the HCSO's inmate grievance process, as he had filed grievances to complain about various conditions at the facility on multiple occasions both before and after the date of the currently alleged use of force. (Affidavit of Lieutenant Allen, Doc. No. 80 (hereinafter "Allen Affidavit")). Kendrick's inmate medical records also show that he was aware of the medical grievance procedure, as he had filed medical grievances on multiple occasions. (Weaver Affidavit).

In the early morning hours of November 13, 2007, Kendrick, along with fifty to seventy-five inmates[1] were being processed for transport to the Hillsborough County Courthouse for hearings in their respective criminal cases. (Jennings Affidavit). Almost all of the inmates, including Kendrick, were unrestrained and subject to the control of only a few deputies. (Id).

The procedure for transporting inmates requires verification of the inmate's identity by examining his or her wrist band. (Id). On this occasion, at approximately 5:30 a.m., despite numerous requests from Corporal Jennings, Kendrick refused to show his wristband to the Corporal. (Id).[2] A verbal altercation ensued at which time Corporal Jennings, who is 4'11" tall and weighs less than 150 pounds, enlisted the assistance of Deputy Faircloth. (Id). At that time, according to Kendrick, Deputy Faircloth "slammed"

---

[1] Kendrick alleges that there were fifty to seventy-five witnesses to the use of force occurrence. The Court construes this allegation to mean that at least fifty to seventy-five inmate prisoners were in the area waiting to be transported. (See Exhibit 1 to Plaintiff's Complaint, Doc. No. 1; Doc. No. 60, exhibit A7). Notably, Kendrick did not support any of his filings with a statement or affidavit of any of these witnesses.

[2] Kendrick does not deny that this event happened in "Plaintiff's Response to Admissions," found at Exhibit E to Doc. No. 77. Kendrick responds that he is "Not sure." (See also Doc. No. 72, no. 2).

Kendrick down to a sitting position in a nearby chair. (See Plaintiff's Response to Interrogatories, Exhibit F to Doc. No. 77). Deputy Faircloth then escorted Kendrick by the arm to a holding cell where, according to Kendrick, as they entered the cell, Deputy Faircloth pushed Kendrick through the door, causing Kendrick either to fall or to hit the cell wall.[3] (Id). Kendrick maintains that at that point he was not resisting Deputy Faircloth.[4] (Id). However, it is undisputed that Kendrick was charged with battery on a law enforcement officer for events that occurred during this altercation and was administratively disciplined for his disruption and for grabbing Deputy Faircloth's groin area. (Affidavit of Cory Faircloth, Doc. No. 82, (hereinafter "Faircloth Affidavit")).

Before 6:00 a.m. that morning, Kendrick was taken to the medical unit and examined for injuries by nursing staff. (Jennings Affidavit). According to medical records, his only injuries were minor scrapes to his knees, left shoulder and his toe. (Weaver Affidavit). The scrapes were bandaged and Kendrick was immediately released from medical, transported, and appeared in court that morning. (Weaver Affidavit; Jennings Affidavit).

Kendrick's medical records show that, after November 13, 2007, and throughout the remaining five months that he was in the custody of the HCSO, Kendrick never raised any complaint with regard to any alleged injuries he sustained from this incident or with regard to the medical care he was provided. (Weaver Affidavit).

---

[3] In his interrogatory responses, Kendrick indicates that he hit the wall, while in his affidavit, Deputy Faircloth states that Kendrick hit the floor. Regardless, it is undisputed that Deputy Faircloth shoved Kendrick and as a result, Kendrick came into contact with one of these surfaces.

[4] Defendants dispute Kendrick's recollection of the events, including Kendrick's denial of his battery of Deputy Faircloth. However, for purposes of this summary judgment motion, the Court considers the facts in the light most favorable to Plaintiff Kendrick.

As part of the inmate disciplinary process, later in the day on November 13, 2007, Kendrick was given the opportunity to present his version of the events to Deputy Rhonda Prescott who investigated the administrative charges against Kendrick. (Affidavit of Deputy Prescott, Doc. No. 83, (hereinafter "Prescott Affidavit")). Kendrick refused to offer testimony and refused to sign the disciplinary form. (Id). Kendrick was again afforded the opportunity to explain his side of the story at the inmate disciplinary hearing held November 18, 2007. Deputy Cornelius presided at the disciplinary hearing. (Affidavit of Deputy Cornelius, Doc. No. 84, (hereinafter "Cornelius Affidavit")). Again, Kendrick declined the opportunity to speak in his behalf and refused to sign the disciplinary form. (Id). Kendrick was found guilty and placed in administrative confinement. (Id).

As evidenced by Kendrick's decision not to participate in the administrative process and not to avail himself of the proper appellate procedures, his inmate records show that Kendrick did not pursue any proper administrative remedies. (Allen Affidavit). However, in an effort to convince this Court otherwise, Kendrick claims that he did appeal the disciplinary finding and offers as proof, a grievance form that predates his actual disciplinary hearing. There is nothing in the record to show that Kendrick ever submitted the grievance form to any deputies or agents of the Sheriff's Office, including the named Defendants. (Id).

Kendrick served his disciplinary confinement sentence and, following his conviction on the pending criminal charge, was eventually transferred to the custody of the Florida Department of Corrections on April 21, 2008. At the time Kendrick was sentenced to 20 years confinement in the Department of Corrections, and at the State's request, Deputy Faircloth consented to having the battery on a law enforcement officer charge nolle

prossed, since Kendrick most likely would not have received any additional sentence for the charge. (Faircloth Affidavit). Kendrick has not returned to the custody of the HCSO since that date.  He filed the instant complaint on September 22, 2008.

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### Alleged Constitutional Violations in Defendants' Individual Capacities

Defendant Faircloth claims that he is entitled to summary judgment in his individual capacity because he did not use excessive force in violation of Kendrick's constitutional rights.  Defendant Jennings contends that she is entitled to summary judgment in her individual capacity because she never placed her hands on Kendrick and because she would not have had an opportunity to intervene in Defendant Faircloth's physical altercation with Kendrick, even had Defendant Faircloth used excessive force. In addition, Defendant Jennings claims she is entitled to qualified immunity.  Defendant Gee claims that he is entitled to summary judgment in his individual capacity because he played no role in Kendrick's administrative disciplinary process.  Further, Defendant Gee contends that any claim against him in his individual capacity would be a *respondeat superior* claim, which is not cognizable under 42 U.S.C. § 1983.

### Alleged Constitutional Violations in Defendants' Official Capacities

Defendant Jennings and Defendant Gee contend that they are entitled to summary judgment in their official capacities because Kendrick's claims are broad and conclusory, and because the HCSO had established constitutional policies related to use of force and to the inmate disciplinary process.

### Alleged Violation of Kendrick's Due Process Rights and Right to Medical Care

Defendants claim they are entitled to summary judgment on Kendrick's due process and medical care claims because Kendrick cannot show any violation of his due process rights related to his administrative process and subsequent discipline, and because Kendrick cannot show he was denied adequate medical care following the use of force incident.

**Title II and III of the Americans With Disability Act (ADA) and State Tort Claims**

Defendants contend that they are entitled to summary judgment as to Kendrick's ADA claims and his state law claims because the claims are deficient.

Defendants support their motion for summary judgment with exhibits, including Affidavits of David Gee, Dr. Bethany Weaver (with complete medical records), Christopher Allen, Nitika Jennings, Cory Faircloth, Rhonda Prescott, and Wayne Cornelius.

## PLAINTIFF KENDRICK'S RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Kendrick claims that he was assaulted by Defendant Faircloth and that he was served with disciplinary charges for assaulting the staff. Kendrick claims that Defendant Faircloth violated his constitutional rights when he stated "F--- the captain, he was in control." The Court will not consider any claim of verbal abuse in ruling on Defendants' motion for summary judgment because a claim of verbal abuse fails to meet the elements of a § 1983 action. "Verbal threats, without more," are generally insufficient "to state a cause of action under the Eighth Amendment." *Chandler v. District of Columbia Dept. of Corrections*, 145 F.3d 1355, 1360 (D.C. Cir.1998) (citing *Hudson v. McMillian*, 503 U.S. at 16, 112 S.Ct. at 1004)).*See also, Stacey v. Ford*, 554 F.Supp. 8 (N.D. Ga. 1982) (Allegations of verbal abuse and threats by prison officials to a prisoner are not cognizable

under section 1983 because such threats do not rise to the level of a constitutional violation.).

Kendrick repeats his claim that Defendant Jennings observed Defendant Faircloth's use of force and did not intervene. Kendrick claims that he filed an appeal of the disciplinary committee's findings of guilt with Sheriff Gee and that Defendant Sheriff Gee denied his appeal by failing to respond within 20 days, thereby violating Kendrick right to due process. **For the first time, Kendrick alleges that Defendant Faircloth retaliated against him,** in addition to subjecting Kendrick to abuse, physical and psychological injury and "disorientation." (See Doc. No. 35, adopted and incorporated in Doc. No. 96 as Kendrick's response to Defendants' motion for summary judgment). Kendrick offers no support for his retaliation claim.

### PLAINTIFF KENDRICK'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Kendrick seeks partial summary judgment against Defendant Gee on his claims arising from the alleged denial of due process related to his disciplinary hearing and punishment. He contends that Defendant Gee is liable for the due process violations because Sheriff Gee failed to correct them on administrative appeal. Kendrick claims that Defendant Gee knew of the due process violations and failed to "do his job" during the appeal process.

Kendrick supports his motion for partial summary judgment with his affidavit, a copy of the Notice of Nolle Prosequi as to his battery on a law enforcement officer charge, an inmate grievance related to the use of force incident, and a copy of the disciplinary report which he refused to sign.

**STANDARDS OF REVIEW**

Standard of Review for Qualified Immunity

Qualified immunity protects officials performing discretionary functions from liability "where their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Gold v. City of Miami*, 121 F.3d 1442, 1445 (11th Cir. 1997)(quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)); *Storck v. City of Coral Springs*, 354 F.3d 1307, 1313 (11th Cir. 2003). As long as an official's conduct is not unlawful, the doctrine of qualified immunity exempts government officials from damage suits to enable them to perform their responsibilities without threats of liability. *Hutton v. Strickland*, 919 F.2d 1531, 1536 (11th Cir. 1990). Qualified immunity is intended to protect "all but the plainly incompetent or those who knowingly violate the law." *McCoy v. Webster*, 47 F.3d 404, 407 (11th Cir. 1995)(quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

A government official's conduct is evaluated under an "objective legal reasonableness" standard. *Koch v. Rugg*, 221 F.3d 1283, 1295 (11th Cir. 2000). Subjective intent is irrelevant to the issue *Id.* Under the "objective legal reasonableness" standard, a government official performing discretionary functions is protected if "a reasonable official could have believed his or her conduct to be lawful in light of clearly established law and the information possessed by the official at the time of conduct occurred." *Hardin v. Hayes,* 957 F.2d 845, 848 (11th Cir. 1992). The Supreme Court has set forth a two part analysis to be applied to a defense of qualified immunity. *Hope v. Pelzer*, 536 U.S. 730, 736 (2002); *Saucier v. Katz,* 533 U.S. 194, 201 (2001). The threshold inquiry a court must undertake is whether Kendrick's allegations, if true, establish a constitutional violation. If no

constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity. *Saucier*, 533 U.S. at 201. However, if a constitutional right would have been violated under Kendrick's version of the facts, the next sequential step is to ask whether the right was clearly established. *Id.*; *Strock*, 354 F.3d at 1314. The *Saucier* analysis is still an appropriate consideration in qualified immunity cases but the sequence of analysis should not be regarded as an inflexible requirement in all cases. *Pearson v. Callahan*, 129 S. Ct. 808 (2009).

In *Saucier*, the Supreme Court stated that the relevant query is whether it "would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id. In *Hope,* the Supreme Court refined the *Saucier* query, holding that the "…salient question… is whether the state of law gave [the officers] fair warning that their alleged treatment [of Kendrick] was unconstitutional." The *Hope* Court emphasized that officers sued in a section 1983 action have a "right to fair notice." 536 U.S. at 739. To demonstrate that summary judgment is appropriate on a qualified immunity defense, the defendant must show that he is entitled to judgment as a matter of law, and that there are no genuine issues of material fact pertinent to that law. *Sims v. Metro Dade County*, 972 F.2d 1230, 1233-34 (11th Cir. 1992)(citing *Rich v. Dollar*, 841 F.2d 1558, 1562 (11th Cir. 1988)).

In the Eleventh Circuit, "for the law to be clearly established to the point that qualified immunity does not apply, the law must have earlier been developed in such a concrete and factually defined context to make it obvious to all reasonable government actors in the defendants' place, that what he is doing violates federal law." *Jenkins v. Talladega City Board of Education*, 115 F.3d 821, 823 (11th Cir. 1997)(en banc)(citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

"[A] public official is entitled to qualified immunity unless, at the time of the incident, the preexisting law dictates, that is, truly compel[s], the conclusion for all reasonable similarly situated public officials that what [the official] was doing violated [the plaintiff's] federal rights in the circumstance." *Wilson v. Zellner*, 200 F.Supp. 2d 1356, 1360 (M.D. Fla. 2002), (citing *Marsh v. Butler County*, 268 F.3d 1014, 1030-31 (11th Cir. 2001)(en banc)).

Standard of Review for Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of showing the Court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). A moving party discharges its burden on a motion for summary judgment by "showing" or "pointing out" to the Court that there is an absence of evidence to support the non-moving party's case. *Id.* at 325. Rule 56 permits the moving party to discharge its burden with or without supporting affidavits and to move for summary judgment on the case as a whole or on any claim. *See id.* When a moving party has discharged its burden, the non-moving party must then "go beyond the pleadings," and by its own affidavits, or by "depositions, answers to interrogatories, and admissions on file," designate specific facts showing there is a genuine issue for trial. Id. at 324.

In determining whether the moving party has met its burden of establishing that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law, the Court must draw inferences from the evidence in the light most favorable to the non-movant and resolve all reasonable doubts in that party's favor. *See Samples*

*on behalf of Samples v. City of Atlanta*, 846 F.2d 1328, 1330 (11th Cir. 1988). The Eleventh Circuit has explained the reasonableness standard:

> In deciding whether an inference is reasonable, the Court must "cull the universe of possible inferences from the facts established by weighing each against the abstract standard of reasonableness." [citation omitted]. The opposing party's inferences need not be more probable than those inferences n favor of the movant to create a factual dispute, so long as they reasonably may be drawn from the facts. When more than one inference reasonably can be drawn, it is for the trier of fact to determine the proper one.

*WSB-TV v. Lee*, 842 F.2d 1266, 1270 (11th Cir. 1988).

Thus, if a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant the summary judgment motion. *See Augusta Iron & Steel Works v. Employers Ins. of Wausau,* 835 F.2d 855, 856 (11th Cir. 1988). A dispute about a material fact is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.

**Because there are no genuine issues of material fact remaining, Defendants' motion for summary judgment will be granted and Kendrick's motion for partial summary judgment will be denied.**

## DISCUSSION

## A. INDIVIDUAL CAPACITY CLAIMS

### 1. Defendant Faircloth Is Not Liable in his Individual Capacity

Because Kendrick was a pretrial detainee at the time of the incident, Kendrick's alleged excessive use of force claim against Defendant Faircloth in his individual capacity must be analyzed under the Fourteenth Amendment, *Fennell v. Gilstrap*, 559 F.3d 1212 (11th Cir. 2009) and under the "malicious and sadistic" standard established by the Cruel and Unusual Punishment clause of the Eighth Amendment. *Bozeman v. Orum*, 422 F.3d 1265 (11th Cir. 2005). Accordingly, the relevant factors that must be considered are 1) the need for the application of force; 2) the relationship between the need and amount of force used; 3) the extent of the injury inflicted; 4) the extent of the threat to the safety of staff and/or inmates;  and, 5) any efforts made to temper the severity of forceful response. *Fennell,* 559 F.3d at 1217; *Whitley v. Albers*, 475 U.S. 312 (1986).

In considering those factors, a wide range of deference should be given to officials acting to preserve discipline and security. *Bennett v. Parker*, 898 F.2d 1530 (11th Cir. 1990).

1) *The Need for the Application of Force in this Case*

It is undisputed that at the time of the alleged use of force, Kendrick was an unrestrained inmate, with a history of noncompliance, who was in the custody of the HCSO on attempted murder charges. It is uncontroverted that as part of the transport process, Kendrick was asked to show his identification wrist band and was noncompliant. At that time, it was necessary to remove Kendrick from the transport area to maintain control and order and to prevent an incident of noncompliance with a smaller female deputy from escalating into a major fracas.

The ability to maintain control through verbal commands and physical direction of inmates is critical. In the transport waiting area on the date of the incident, at least fifty to

seventy-five unrestrained inmates were being guarded and controlled by a few unarmed detention deputies. In that setting, the ability to maintain control of unrestrained, potentially violent inmates through verbal commands and physical direction was critical. Even in the light most favorable to Kendrick, and setting aside his verbal hostility and his battery on Deputy Faircloth, some amount of force was appropriate and necessary to physically direct Kendrick and ensure compliance with Defendant Faircloth's efforts to remove Kendrick from the area and diffuse the situation.

2) *The Relationship Between the Need and Amount of Force Used*

Kendrick contends that the force occurred when Kendrick was placed in a chair and then placed in a holding cell. In both cases, any force utilized was directly related to an effort to control and move Kendrick following his refusal to comply with a command from Corporal Jennings. While Corporal Jennings states that she had directly ordered Kendrick to show his identification wrist band several times, Kendrick cannot recall how many times he was ordered to do so. (Jennings Affidavit). There is no evidence, nor is there any allegation, that Defendant Faircloth punched, struck, or used any other excessive force in dealing with Kendrick. Even assuming, as the Court must, that Faircloth forcefully sat Kendrick into a chair and/or forcefully pushed him into the holding cell wall, the amount of force used was still not so grossly disproportionate or unrelated "to the task at hand" to suggest the type of malicious or sadistic purpose required to satisfy Kendrick's burden under the *Whitley* subjective analysis of a Fourteenth Amendment claim. Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights. *Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir.), *cert. denied*, 414 U.S. 1033 (1973). A push or shove that requires minor medical treatment

does not rise to the level of a constitutional violation. *Bennett*, 898 F.2d at 1533. In short, the force Defendant Faircloth used, even if deemed more than was necessary in hindsight, was reasonably related to Deputy Faircloth's need to maintain order and discipline in the transport area on the day of the incident.

3) *The Extent of Injury Inflicted*

Kendrick claims in a conclusory and unsubstantiated fashion, that Deputy Faircloth's actions aggravated or caused permanent injury to his "head, neck, knee, back, as well as foot . . .loss of some hearing, slurr[sic] in speaking and . . .involuntary muscle twitching." (Plaintiff's Response to Interrogatories # 8, 20, Exhibit "F" to Doc. No. 77). Kendrick's medical records belie his claims. In the five plus months following this incident Kendrick was in the custody of the HCSO, Kendrick was seen on many occasions by medical staff. With the exception of seeing the nurse on the date of incident, he neither required, nor sought, any specific follow-up treatment for the November 13, 2007 injuries. (Weaver Affidavit).

In fact, it was not until April 19, 2008, that Kendrick mentions having "head and back pain with dizzyness[sic] and disoriented spells." (Id). While the nurse's notes on that date indicate a possible correlation between Kendrick's [hitting his] head in November 2007 and his medical problems, Kendrick stated to the nurse that he had been having the pain for just "a few days now." (Id). It is also noteworthy that Kendrick complained about back and leg pain multiple times prior to the date of incident, but virtually never mentioned the ailments following the incident. (Id). Kendrick does not support in any way his conclusory allegations of serious or permanent injuries from the incident with Defendant Faircloth. *Bennett*, 898 F.2d at 1533.

On the date of the use of force incident, according to the medical records, Nurse Wallace treated Kendrick for abrasions/scrapes to his knees, left shoulder and a toe. These areas were cleaned and dressings were applied. (Weaver Affidavit). Accordingly, the evidence overwhelmingly indicates that any injuries sustained by Kendrick as a result of force used by Deputy Faircloth were minimal at most. The minimal nature of the injuries reinforce the fact that any force utilized by Deputy Faircloth was *de minimis* in nature and did not rise to the level of a constitutional violation. *See  Brown v. Smith*, 813 F.2d 1187 (11th Cir. 1987).

4) *The Extent of the Threat Reasonably Perceived*

As previously stated, the transport waiting area is a potentially volatile area where a gathering of unrestrained inmates, many of whom are facing violent offenses and are not normally housed together, are assembled and "verified" for transport to their respective court proceedings. (Jennings Affidavit).  An inmate's noncompliance to verbal commands, particularly those given by an unarmed, smaller female deputy like Corporal Jennings, necessitates swift and decisive response to prevent escalation. A confrontation with a single unrestrained inmate like Kendrick, in the presence of other inmates, can rapidly deteriorate into a situation which implicates institutional scrutiny. *Brown*, 813 F.2d at 1189.

5) *Efforts to Temper the Severity of the Response*

This factor allows the Court to take into account efforts by involved deputies to mitigate the effects of whatever force the Defendant(s) used.  *Fennell,* 559 F.2d at 1220. Appropriate mitigation efforts provide strong evidence that the force utilized lacks a malicious or sadistic purpose. *Cockrell v. Sparks*, 510 F.3d 1307 (11th Cir. 2007). In the

instant case, it is undisputed that Kendrick was immediately removed from the other inmates and placed in a holding cell. (Jennings Affidavit).

This action alone indicates that the primary objective was to terminate the disturbance and place Kendrick is a controlled area where no force would be necessary. Most importantly, following the use of force, personnel immediately ensured that Kendrick was examined and received appropriate treatment from nursing staff. (Id). In fact, the process was conducted so that Kendrick was cared for and appeared in court later that morning. (Id).

Considering the foregoing factors, the undisputed and factually supportable evidence demonstrates that the force used by Deputy Faircloth does not support a finding of a malicious and sadistic purpose or evince a conduct so extreme and wanton that it shocks the conscience. Even assuming, *arguendo,* that Kendrick's allegations were sufficient to raise some question over the reasonableness of the force used by Deputy Faircloth, such would not be sufficient to defeat summary judgment for Defendant Faircloth. Only a reliable inference of wantonness in the infliction of pain will suffice, and neither the judge nor jury is free to substitute his or her judgment for that of officials who made a considered choice in the amount of force necessary. *Brown*, 813 F.2d at 1188-1189.

The credible evidence before this Court provides no basis for such a "reliable inference". Instead, the instant case closely mirrors a number of other cases in which the use of force was found to fall short of a constitutional violation. *Bennett*, 898 F.2d 1530 (inmate's claim that two guards grabbed by the throat and struck him with a night stick after verbal dispute); *Brown*, 813 F.2d 1187 (guard not liable for putting riot baton against neck of inmate and pinning inmate against cell for refusing to enter cell when ordered despite

claim of serious injury by inmate); *Fischer v. Ellegood*, 238 Fed.Appx. 428 (11th Cir. 2007)(prisoner's allegation that he was pepper sprayed for not following orders during a shakedown); *Enriquez v. Landers, et al*, 2005 WL 2405829 (M.D. Fla. 2005)(inmate claiming unprovoked attacks leaving him with bruising and abrasions was *de minimis* injury suggesting *de minimis* force not sufficient to prove an Eighth Amendment violation); *Springs v. Lagravinese*, 2008 WL 2074415 (M.D. Fla. 2008)(inmate who was grabbed by the arm, had it twisted behind him and was shoved into his cell did not support a finding malicious and sadistic purpose); *Hall v. Leavins*, 2009 WL 2905912 (N.D. Fla. 2009)(inmate who was choked, shoved and slammed to the floor does not evidence more than *de minimis* force); *Robinson v. Davis*, 2009 WL 153162 (N.D. Fla. 2009)(shoving shackled inmate to the ground, resulting in injury and abrasions to inmate's knee, ankle and toe was *de minimis* use of force and insufficient under the Eighth Amendment standard). Accordingly, upon consideration of the factors provided under the well-established test of the Fourteenth Amendment, Kendrick has not presented this Court with sufficient evidence to meet his burden and Defendant Faircloth is entitled to summary judgment in his individual capacity.[5]

### 2. Defendant Jennings Is not Liable in her Individual Capacity

Kendrick alleges Corporal Jennings failed to act or intervene during the  alleged use of force incident. Kendrick admits that Corporal Jennings never forcefully placed her hands on him during the events in question. (Plaintiff's Response to Admissions, # 4, Exhibit E to Doc. No. 77).

---

[5] Kendrick does not sue Defendant Faircloth in his official capacity.

For an officer to be held liable on the theory that he or she failed to protect a plaintiff from the use of excessive force by another officer, he or she: (1) must have observed or had reason to know that excessive force would be or was being used, and (2) must have had both the opportunity and the means to prevent the harm from occurring. *Carr v. Tatangelo*, 338 F.3d 1259 (11th Cir. 2003). In the present case, accepting Kendrick's version as true, where only two, split second incidents of force were used by Deputy Faircloth, even if the force was excessive, Corporal Jennings would not have had an opportunity to prevent the force. Moreover, given the nature of the force at issue, it is doubtful that Corporal Jennings, or any reasonable deputy, would have immediately perceived that excessive force had been or was being used.

Assuming, *arguendo*, that Defendant Faircloth's acts constituted excessive force, the undisputed facts fail to demonstrate Jennings was under a duty to intercede. The Eleventh Circuit stated, in *Hadley v. Gutierrez*, 526 F.3d 1324 (11th Cir. 2008):

> "[A]n officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force, can be held liable for his nonfeasance." *Velazquez v. City of Hialeah*, 484 F.3d 1340, 1341 (11th Cir.2007) (quoting *Skrtich v. Thornton*, 280 F.3d 1295, 1302 (11th Cir.2002)) (quotation marks omitted). But it must also be true that the non-intervening officer was in a position to intervene yet failed to do so. *Priester v. City of Riviera Beach, Fla.*, 208 F.3d 919, 924 (11th Cir.2000).

516 F.3d at 1331. No duty is placed on a law enforcement officer to prevent the use of excessive force unless the officer had reason to expect the use of excessive force before it occurred. *See Riley v. Newton*, 94 F.3d 632 (11th Cir. 1996). *Hadley*, *supra*.

Most importantly, as previously argued, since the force used by Deputy Faircloth did not give rise to a constitutional violation, there was no duty to intervene by Corporal Jennings. *Crenshaw v. Lister*, 556 F.3d 1283 (11th Cir. 2009).

Finally, over and above the preceding arguments, Corporal Jennings enjoys protection from individual liability because she is entitled to qualified immunity. (See the standard for qualified immunity above). Given the attendant circumstances, it cannot be said that every reasonable deputy in Corporal Jennings' position would have seen the obvious need to intervene. Defendant Jennings is entitled to summary judgment in her individual capacity.

### 3. Defendant Gee Is not Liable in his Individual Capacity

Kendrick alleges a cause of action against Sheriff David Gee in his individual capacity ostensibly for violation of either Kendrick's Eighth Amendment right or Fourteenth Amendment right. However, the record evidence before the Court is devoid of any basis for such liability. Kendrick readily concedes that he has no idea of what role Sheriff Gee played in the use of force event. (Plaintiff's Response to Admissions, # 12 and 13, Exhibit "E" to Doc. No. 77). Kendrick has failed to articulate any involvement by Sheriff Gee following the use of force event, through the provision of medical care or at any point thereafter with the exception of Kendrick's conclusory allegation that Sheriff Gee failed to take some remedial action with regard to Kendrick's alleged appeal of his disciplinary sanctions. The affidavits before the Court make clear that Sheriff Gee played no role in Kendrick's administrative disciplinary process. (See affidavits, Doc. Nos. 78, 80, 81, 82).

Kendrick's attempt to raise an individual cause of action against Sheriff Gee is relegated solely to the realm of vicarious or respondeat superior liability. A *respondeat*

*superior* claim is deficient as a matter of law as the acts of employees are not imputed to the Sheriff under 42 U.S.C. § 1983. *Greer v. Hillsborough County Sheriff's Office*, 2006 WL 2535050 (M.D. Fla. 2006). Defendant Gee is entitled to summary judgment in his individual capacity.

## B. OFFICIAL CAPACITY CLAIMS

### *Kendrick Has Failed To Articulate any Claims Against Either Sheriff Gee or Corporal Jennings in their Official Capacities.*

Whether against Sheriff Gee in his official capacity or Corporal Jennings in her official capacity, Kendrick's claims merely constitute a claim against the HCSO itself. *Brown v. Neumann*, 18 F.3d 1289 (11th Cir. 1999). Notwithstanding his broad and conclusory claims, Kendrick presents no evidence sufficient to raise an official capacity claim in this matter. To establish agency, or official capacity liability in a federal cause of action, Kendrick must offer a credible and factually supportable basis to demonstrate that some particular policy, custom or practice was the moving force behind the alleged constitutional deprivations. *Ludaway v. City of Jacksonville, Fl.*, 245 Fed. Appx. 949 (11th Cir. 2007); *Bd. Of County Comm'rs v. Brown*, 520 U.S. 397 (1997). To the contrary, the evidence in this case shows that the HCSO had proper policies in both its use of force measures and its inmate disciplinary process. (Allen Affidavit).

Moreover, as previously argued, Kendrick has not met his burden with regard to the existence of a constitutional deprivation and even if he could do so, the record does not support that the deprivation was caused by a particular policy, custom or practice of the HCSO. For both reasons, Kendrick's official capacity claims have no merit and Sheriff Gee

and Corporal Jennings are entitled to summary judgment on Kendrick's official capacity claims.

## C. NO VIOLATION OF KENDRICK'S DUE PROCESS RIGHTS.

Kendrick appears to be raising a claim for violation of his due process rights by one or more of the Defendants arising from the handling of his administrative discipline proceedings and punishment. It is well-established that any substantive due process rights enjoyed by Kendrick can stem only from those specified by federal law. His limited procedural due process rights under the circumstances in this case require only: 1) advanced written notice of the disciplinary charge; 2) a written statement of the basis for the charge; and, 3) the opportunity to call witnesses and present evidence at the disciplinary hearing. *Colquitt v. Anderson*, 2008 WL 4097715 (M.D. Fla. 2008) (county jail detainee received 30 days confinement after finding of guilt stemming from hearing in which he failed to testify); *Young v. Jones*, 37 F.3d 1457 (11th Cir. 1994). In compliance with legal requirements established by federal law and in keeping with Florida Model Jail Standards, the HCSO has established procedures and provided safeguards with respect to inmate disciplinary matters. Specifically, Detention Standard Operating Procedure DTN 915.03 (*attached to* Affidavit of Lt. Allen, Doc. No. 80) sets forth the disciplinary process. As demonstrated *infra*, Kendrick willfully failed to comply with those procedures or even meaningfully participate in the process.

1) *Kendrick's Refusal To Participate in the Disciplinary Process*

As Kendrick is aware, HCSO jail inmates accused of violations are confronted with the allegations and afforded the opportunity to present their side of the story. (Allen Affidavit). Kendrick refused to present testimony on his behalf during the investigation by

Deputy Prescott and refused to sign the disciplinary form presented to him. (Prescott Affidavit; Allen Affidavit). At the disciplinary hearing held by Deputy Cornelius on November 18, 2007, Kendrick again refused to offer any testimony or argument in his defense and refused to sign the disciplinary recommendation form. (Cornelius Affidavit; Allen Affidavit).

The HCSO DTN Standard Operating Procedure 915.03(E)(16) provides that after a disciplinary recommendation, an HCSO inmate has 14 days to submit an inmate request to the facility commander stating the basis for the appeal. This protocol was known to Kendrick. (Cornelius Affidavit; Allen Affidavit). The facility commander to whom any appeal should have been made was Lieutenant Allen, not Defendant Gee, as Lieutenant Allen was the commander who approved the disciplinary recommendation. (Id).

*2) Kendrick's Failure To Follow Proper Protocol*

The sole evidence upon which Kendrick relies in support of his assertion that he pursued and was denied due process is the Inmate Grievance he has attached as Exhibit "B" to his Motion for Partial Summary Judgment. (Doc. Nos. 59, 60). As pointed out by Lieutenant Allen in Allen's affidavit (Doc. No. 80), the fact that Kendrick's Inmate Grievance was never signed by a receiving deputy, never provided a grievance number and never placed in Kendrick's Inmate File, indicates that the grievance was never actually submitted to detention personnel. Moreover, an Inmate Grievance was not the proper vehicle to raise an appeal. By comparison, see Kendrick's properly submitted August 2006 and September 2005 Inmate Grievances with responses and signatures of acknowledgment by Kendrick. (Exhibits "J" and "K" to Doc. No. 77). Clearly, Kendrick was familiar with the proper Inmate Grievance procedures yet he has attempted to support his claims with a grievance that was never actually submitted to Defendants. Kendrick has offered no competent evidence to

support a claim that that any of his constitutional rights were violated as part of his inmate disciplinary procedure.

## D. NO DENIAL OF MEDICAL CARE

Kendrick alleges, without providing specific support or documentation, that he did not receive adequate medical care following the use of force incident. Once again, Kendrick's medical file directly contradicts his assertion. Kendrick was in the custody of the HCSO for two years and nine months over which time he received treatment and medication for conditions ranging from diabetes to dental issues. As previously discussed, immediately following the use of force event, Kendrick was examined and treated by medical staff. For the months following the incident, prior to his transfer to state custody, Kendrick continued to receive appropriate medical treatment for his various conditions. In that time span, Kendrick submitted multiple medical grievances regarding a particular issue or need. In all cases, the records indicate that the need was addressed.

To state a claim for denial of medical treatment to an extent that constitutes an Eighth Amendment violation, Kendrick must provide sufficient evidence to support a finding that the named Defendants were deliberately indifferent to his medical needs. It is only such indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97 (1976). There is nothing in the record to support Kendrick's position, and  Defendants are entitled to summary judgment as to Kendrick's claim regarding the deficiency of his medical treatment.

## E. KENDRICK'S ADA CLAIMS ARE DEFICIENT

### Title II

Individual defendants cannot be held liable for violation of Title II of the ADA. *Mason v. Stallings, 82 F.3d 1007, 1009* (11 Cir.1996); *Shotz v. City of Plantation, Fla.*, 344 F.3d 1161, 1172(11 Cir.2003); *see also Alsbrook v. City of Maumelle*, 184 F.3d 999, 1005 n. 8 (8th Cir.1999) (*en banc ), cert. dismissed, Alsbrook v. Arkansas,* 529 U.S. 1001 (2000).

Title II of the ADA prohibits discrimination in services, programs or activities of a "public entity" or "discrimination by any such entity."  42 U.S.C. § 12132.  "Public entity" is defined in the statute as:

> (A) Any State or local government;

> (B) any department, agency, special purpose district, or other instrumentality of a State or States of local government; and

> (C) the National Railroad Passenger Corporation, and any commuter authority (as defined in section 502(8) of Title 45).

42 U.S.C. § 12131. "Public entitles" encompassed by Title II of the ADA include correctional facilities. This section clearly does not include individuals. *Mason v. Stallings, 82 F.3d 1007, 1009* (11 Cir.1996); *Shotz v. City of Plantation, Fla.*, 344 F.3d 1161, 1172(11 Cir.2003); *see also Alsbrook v. City of Maumelle*, 184 F.3d 999, 1005 n. 8 (8th Cir.1999) (*en banc ), cert. dismissed, Alsbrook v. Arkansas,* 529 U.S. 1001 (2000).

To state a claim under Title II of the Americans with Disabilities Act (the "ADA"), Kendrick must demonstrate that: (1) he is a qualified individual with a disability; (2) he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities or was otherwise discriminated against by the public entity; and (3)

such exclusion, denial of benefits, or discrimination was by reason of his disability. *Shotz v. Cates*, 256 F.3d 1077 (11th Cir. 2001). Kendrick has failed to sufficiently allege the essential elements of such a claim and has not provided credible, competent evidence in support of such an allegation. Even if an excessive force event had occurred, which it did not, Kendrick is not a qualified individual and no aspect of his custody, care or medical treatment was denied or otherwise rendered in a discriminatory manner by reason of any disability. Nothing in Kendrick's medical file indicates that he even suffered from a qualifying disability. (Weaver Affidavit).

Furthermore, Kendrick received ample and continuous medical care for his pre-existing ailments. There is no indication that such treatment was denied, altered or diminished for any reason, much less by reason of a disability.  Finally, the failure to provide adequate medical care is not by itself an ADA violation. *See Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1289, 1294 (11th Cir. 2005) (noting that inadequate medical treatment is not, without more, an ADA violation) (citing *Bryant v. Madigan*, 84 F.3d 246, 248 (7th Cir.1996)); *Fitzgerald v. Corr. Corp. of Am.,* 403 F.3d 1134, 1144 (10th Cir.2005). Defendants are entitled to summary judgment on Kendrick's Title II ADA claim.

### Title III

Title III of the ADA prohibits discrimination in places of public accommodation against persons with disabilities. 42 U.S.C. § 12182(a). Discrimination includes "a failure to remove architectural barriers, and communication barriers that are structural in nature, in existing facilities ... where such removal is readily achievable." 42 U.S.C. § 12182(b)(2)(A)(iv). Title III of the ADA defines "public accommodation" as follows:

The following private entities are considered public accommodations for purposes of this subchapter, if the operations of such entities affect commerce-

(A) an inn, hotel, motel, or other place of lodging, except for an establishment located within a building that contains not more than five rooms for rent or hire and that is actually occupied by the proprietor of such establishment as the residence of such proprietor;

(B) a restaurant, bar, or other establishment serving food or drink;

(C) a motion picture house, theater, concert hall, stadium, or other place of exhibition or entertainment;

(D) an auditorium, convention center, lecture hall, or other place of public gathering;

(E) a bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment;

(F) a Laundromat, dry-cleaner, bank, barber shop, beauty shop, travel service, shoe repair service, funeral parlor, gas station, office of an accountant or lawyer, pharmacy, insurance office, professional office of a health care provider, hospital, or other service establishment;

(G) a terminal, depot, or other station used for specified public transportation;

(H) a museum, library, gallery, or other place of public display or collection;

(I) a park, zoo, amusement park, or other place of recreation;

(J) a nursery, elementary, secondary, undergraduate, or postgraduate private school, or other place of education;

(K) a day care center, senior citizen center, homeless shelter, food bank, adoption agency, or other social service center establishment; and

(L) a gymnasium, health spa, bowling alley, golf course, or other place of exercise or recreation.

42 U.S.C. § 12181(7).

This Court has not found any authority in which a jail or correctional institution has been held subject to the provisions of Title III. Nor has the Court located any case which supports imposing liability upon prisons under Title III. To the contrary, legal authority exists to suggest that a jail or prison facility does not constitute a place of "public accommodation" as defined in the applicable statutory provisions. *See Morgan v. Mississippi*, Slip Copy, 2008 WL 44981 *5-6 (S.D. Miss. 2008) (finding public accommodation under Title III not to include state prison); *Brown v. King County Dept. of Adult Corrections*, 1998 WL 1120381 *6 (determining that county correctional facility is not considered a place of public accommodation under state statute). Consequently, the categories which are regarded as places of public accommodation do not arguably encompass a penal facility, and the Defendants are entitled to summary judgment as to Kendrick's Title III ADA claim.

**F. KENDRICK'S FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES**

Kendrick's core allegations are that he was subjected to excessive force on the morning of November 13, 2007; did not receive sufficient due process on his administrative disciplinary charge; and was provided insufficient treatment while in the custody of the HCSO Jail. Obviously, all of these complaints arose during his confinement as an HCSO jail inmate. As stated previously, Kendrick was in the HCSO's jail for over five months following the incident date of November 13, 2007. Therefore, Kendrick had ample opportunity to avail himself of the administrative remedies afforded by Defendants to try to remedy his complaints. However, Kendrick has offered no tangible evidence, and Defendants know of no such evidence, demonstrating that Kendrick ever properly requested a review or demanded an inquiry into the underlying use of force incident or any ancillary matters such as the criminal charges or his subsequent medical treatment.

Even when he raised the allegation of excessive force with the presiding criminal trial court he was told to "take his complaints up with the HCSO jail." (*See* Plaintiff's Exhibits to his Motion for Partial Summary Judgment, A9-A12) (Doc. Nos. 59, 60). As previously stated, Kendrick was aware of the grievance process. However, Kendrick has presented only a single grievance which was never submitted by Kendrick or received by the Defendants as his substantial and competent evidence that he pursued all available administrative remedies for the complaints he has alleged. His submission does not sufficiently comply with the requirements of the Prisoner Litigation Reform Act, which makes exhaustion mandatory.

In the present case, even in the light most favorable to Kendrick, the following facts are now undisputed. Kendrick was involved in an altercation with Deputy Faircloth on November 13, 2007 which resulted in an administrative disciplinary proceeding against Kendrick for battery on a law enforcement officer. (Faircloth Affidavit; Jennings Affidavit). On the same date, after Kendrick returned from court, Deputy Prescott investigated the incident and attempted to obtain Kendrick's version of the events.

Kendrick refused to talk with Deputy Prescott and refused to sign the disciplinary form. (Prescott Affidavit). Kendrick next refused to cooperate with Deputy Cornelius at the hearing held on November 18, 2007. (Cornelius Affidavit). Although there is no indication it was submitted to HCSO jail staff, Kendrick at some time created an Inmate Grievance form in his own writing, dated November 16, 2007. As previously discussed, even if submitted, the grievance form would not be the appropriate method for appealing a disciplinary ruling. (Allen Affidavit). Even more notable is the fact that the Inmate Grievance form provided by Kendrick predates by two days the disciplinary hearing and

recommendation made by Deputy Cornelius. (Cornelius Affidavit). Obviously, such a document, even if it had been submitted, is incapable of serving as evidence of an appeal demonstrating Kendrick's exhaustion of his administrative remedies.

What is equally clear by virtue of Kendrick's refusal to participate in the disciplinary process (i.e. refusing to voice his version of events, refusal to sign the forms, and failure to seek a proper appeal had he chosen to do so) is that Kendrick has not, and will not, be capable of providing this Court with competent evidence that he exhausted his administrative remedies with regard to the excessive force or disciplinary allegations he is raising as mandated by the PLRA. *Johnson v. Meadows*, 418 F.3d 1152 (11th Cir. 2005).

Furthermore, any claim raised by Kendrick with regard to his medical care suffers from the same deficiency. Kendrick had every opportunity to avail himself of the medical grievance process. He was aware of the process and had used it both prior to, and following, the date of the incident. At no time does Kendrick pursue any administrative relief as a result of not receiving treatment for the injuries he alleges to have sustained by virtue of the use of force incident on November 13, 2007.

## G. STATE TORT CLAIMS ARE DEFICIENT

Finally, Kendrick has not sufficiently articulated cognizable theories of liability separate and apart from the causes already addressed. Notwithstanding, any perceived causes would suffer from the same infirmities which undermine his excessive force claim and his insufficient medical care claim. Moreover, once again, his failure to exhaust his various administrative remedies is fatal.

**SUMMARY**

Based on the foregoing, the only competent, substantial and undisputed material evidence before this Court demonstrates that 1) Kendrick was not subjected to excessive force by Defendant Faircloth in violation of his constitutional rights; 2) Kendrick has not stated a basis for any cause of action against Defendant Jennings in either her official or individual capacity; 3) Kendrick has not stated a basis for any cause of action against Defendant Gee in either his official or individual capacity; 4) Kendrick has not stated a basis to claim he received inadequate medical care in violation of the Eighth Amendment; 5) Kendrick has not stated a basis to claim violation of his due process rights under the Fourteenth Amendment; 6) Kendrick has failed to demonstrate exhaustion of his administrative remedies under the PLRA; and 7) Kendrick has not properly plead or articulated any other tort-based cause of action which is not subject to dismissal for the previously stated deficiencies. **Accordingly, the Court orders**:

Defendants' motion for summary judgment (Doc. No. 77) is **GRANTED**. Kendrick's motion for partial summary judgment (Doc. No. 85) is **DENIED**. Kendrick's motion for costs judgment (Doc. No. 89) is **DENIED.** The Clerk is directed to enter judgment against Kendrick and to close this case.

ORDERED at Tampa, Florida, on January 19, 2010.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Counsel of Record
Michael Anthony Kendrick